UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **SUNDEE WILHITE BOLTON ET AL** | **CASE NO. 3:19-CV-00657** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **WENDELTA PROPERTY HOLDINGS LLC** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to remand [doc. # 16] and a motion for leave to amend pleadings [doc. # 15], both filed by Sundee Wilhite Bolton and Tommy Ray Bolton (collectively "plaintiffs"). The motions are opposed.

For reasons set forth below, the motion for leave to amend is GRANTED[1] and it is recommended that the case be remanded.

**Background**

Plaintiffs filed the instant personal injury suit on April 2, 2019, in the Fourth Judicial District, Parish of Ouachita, seeking damages arising from plaintiff Sundee Bolton's slip-and-fall accident at Wendy's in West Monroe, Louisiana. The named defendants in the original complaint were Wendelta Property Holdings, LLC, Liberty Mutual Insurance Company, and "[p]resently unknown and unnamed manager and employees of the Wendy's Restaurant." (Petition ¶¶ 2-5).

According to plaintiffs, on or about May 16, 2018, Sundee Bolton parked at and entered Wendy's to pick up meals to go. (Petition ¶ 4). As Sundee Bolton attempted to leave, she slipped on a puddle of water and fell to the floor, resulting in severe injuries. (*Id*. ¶ 5). Sundee Bolton was

---

[1] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

informed there was a leaking vent overhead that was dripping condensation. Store management was aware of the leak, but the leak had not been repaired. (*Id.* ¶ 7). There were no cones or warnings alerting customers that there was water on the floor. (*Id.* ¶ 8).

Wendelta and Liberty Mutual (collectively "defendants") removed this case on May 23, 2019, invoking the court's subject matter jurisdiction via diversity, which requires an amount in controversy greater than $75,000 and complete diversity of citizenship between plaintiffs and defendants. 28 U.S.C. § 1332(a). Plaintiffs pleaded their damages "exceed $75,000, exclusive of interests and costs," satisfying the amount-in-controversy requirement. (Petition ¶ 17).

At the time of removal, there was diversity jurisdiction.[2] The Boltons are citizens of Louisiana. Wendelta was and is a citizen of Tennessee.[3] Liberty Mutual is and was a Massachusetts corporation with its principal place of business in Massachusetts.

On January 30, 2020, plaintiffs filed a motion to amend [doc. # 15] and a motion to remand for lack of diversity jurisdiction [doc. # 16]. Plaintiffs seek leave to amend their complaint to substitute Mary Washington in place of the original unnamed Wendy's manager.[4] Because Washington is a Louisiana citizen, granting leave to amend would destroy diversity jurisdiction and require the Court to remand the case to state court.

On February 20, 2020, defendants filed their memorandum in opposition to the motions. [doc. # 22]. They argue, in sum, plaintiffs moved for leave to amend to defeat diversity jurisdiction because they fail to state a viable claim against Mary Washington.

---

[2] The diversity jurisdiction statute presupposes a civil action between "citizens of different state," where all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332; *Farrell Const. Co. v. Jefferson Parish, La.*, 896 F.2d 136, 139-40 (5th Cir. 1990).
[3] It is and was an LLC whose sole member is and was Carlisle LLC. Carlisle LLC's members are and were Chancellor G. Carlisle, an individual who is and was a citizen of Tennessee, and The Gene D. Carlisle Family Trust, of which Chancellor G. Carlisle is and was the trustee, both of the time of filing this suit and at the time of removal.
[4] Plaintiffs also seek to add as a defendant Wendelta, Inc., which they allege is a Mississippi limited liability company. Defendants do not argue that Plaintiffs should not be permitted to add Wendelta, Inc. as a defendant.

2

On February 27, 2020, plaintiffs filed their reply. [doc. # 23]. The matter is ripe.

## Law and Analysis

### I. Standard governing motion for leave to amend

Typically, amendments to pleadings are governed by Federal Rule of Civil Procedure 15(a). That rule provides, in pertinent part, that leave to amend "shall be freely given when justice so requires." The Fifth Circuit has strictly followed this rule, stating that "leave to amend should be granted liberally…" *Robertson v. Plano City of Tex.*, 70 F.3d 21, 22 (5th Cir. 1995).

The Fifth Circuit instructs that when a plaintiff seeks to amend a complaint to add a nondiverse party, justice requires the district court consider the following factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factor bearing on the equities. *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The balancing of these interests does not hinge on "a rigid distinction of whether the proposed added party is an indispensable or permissive party." *Id*.

### II. Individual liability under *Canter*

When a case is removed to federal court on the basis of diversity jurisdiction, the *Erie* doctrine requires federal courts to apply state substantive law when adjudicating state law claims. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "Under Louisiana law, a court may hold a corporate officer or employee individually liable for injuries to third persons under certain circumstances." *Kemp v. CTL Distribution, Inc.*, 440 Fed. Appx. 240, 245 (5th Cir. 2011)(unpubl.)(citing *Canter v. Keohring*, 283 So.2d 716). "This 'liability' may be imposed on such individuals even if the duty breached arises solely from the employment.'" *Id*. (citing *Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 312 (5th Cir. 2005) and *Ford v. Elsbury*, 32 F.3d 931, 936

3

(5th Cir. 1994)). "If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable." *Ford*, 32 F.3d at 936 (citing *H.B. 'Buster' Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La. 1975)). Conversely, when considering the sufficiency of allegations purporting to state a claim for an individual employee's personal liability, "[t]he Court is only concerned…[with] whether a viable claim may be made against [the defendant employee] personally and not whether [the employer] may be held vicariously liable for the action of its employees." *Johnson v. Packaging Corp. of America*, Civil Action No. 18-613-SDD-EWD, 2019 WL 1271053 (M.D. La. Feb. 27, 2019)(internal citations omitted). As explained by the Fifth Circuit, "[v]icarious liability is not a revolving door. In certain situations, an employer may be held liable for the negligent acts of its employees…but *Canter* does not attach liability to a managerial employee absent breach of a duty personally owed by the employee to third parties." *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed. Appx. 911, 918-19 (5th Cir. 2009). Thus, the only question is whether the Boltons have alleged sufficient facts to establish the personal liability of Mary Washington, regardless of the claims they may have against the corporate defendants.

Under Louisiana law, liability may be imposed on an employee under the following conditions:

>  (1) The principal or employer owes a duty of care to the third person…breach of which has caused the damage for which recovery is sought.
>
>  (2) The duty is delegated by the principal or employer to the defendant.
>
>  (3) The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurred when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary

care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

(4) With regard to the personal (as contrasted with the technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of the responsibility unless he personally knows or personally should know of its non-performance or malperformance and has nevertheless failed to cure the risk of harm.

*Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994)(citing *Canter*, 283 So.2d at 721). A supervisor's knowledge of the dangers present "could give rise to the personal duty contemplated in *Canter*." *Hayden v. Phillips Petroleum Co.*, 788 F.Supp. 285, 287 (E.D. La. 1992). If the elements for imposing individual liability on the corporate employee are met, it does not matter that the corporation might also be liable. *H.B. "Buster" Hughes, Inc. v. Bernard*, 318 So.2d 9, 12 (La. 1975).

It is manifest that, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." La. R.S. 9:2800.6(A).

### III. Analysis

a. <u>Purpose to defeat federal jurisdiction.</u>

Defendants argue that plaintiffs' purpose in naming Washington is to defeat federal jurisdiction. Specifically, defendants assert plaintiffs fail to state a facially valid claim against Washington.

5

Courts look to a number of factors to determine whether the purpose of an amendment is to destroy diversity. For example, courts will ask "whether the plaintiff [] knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Schlinder v. Charles Schwab & Co.*, No. 05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005); *see also Penny Realty Inc. v. Sw. Capital Servs., Inc.*, No. 08-0473, 2008 WL 2169437, at *2 (W.D. La. May 23, 2008). Although defendants allege that plaintiffs were dilatory in seeking amendment, they acknowledge that plaintiffs did not know and should not have known Washington's identity when the state court complaint was filed. Instead, defendants base the bulk of their opposition on the grounds that plaintiffs have not outlined a valid claim against Washington in their amended complaint.

"[T]he case law indicates that as long as the plaintiff states a valid claim against the new defendant [], the principal purpose of the amendment is not to destroy diversity jurisdiction." *Herzog v. Johns Manville Prods. Corp.*, No. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002); *see also Tillman v. CSX Transp. Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991)(upholding a district court decision finding that where the plaintiff had a valid cause of action against a defendant, the principal purpose of the amendment was not to defeat federal jurisdiction). Notably, this Court has previously held that as long as a plaintiff states a valid claim, the purpose is not to destroy diversity jurisdiction. *Diamond McCattle Co. LLC v. Range Louisiana Operating LLC*, Civil Action No. 3:18-CV-00229, 2018 WL 6728587 (W.D. La. Dec. 21, 2018).

Paragraph 12(a) of the proposed Amending Complaint alleges:

Petitioners assert that Mary Washington, as Manager, had the duty to protect, warn and safeguard customers of Wendy's from hazardous and unreasonably dangerous conditions; and that Mrs. Washington had knowledge of leaking vents well in advance of the incident made the basis of this suit. She had reported the leakage and requested repairs. Despite this awareness, and having reported repeated leakage, Mary Washington did not block off the area or leave warning cones. With knowledge the drip would recur, Mary Washington did

not block off the area or leave warning cones. With knowledge the drip would recur, Mary Washington took no preventive efforts other than having another spill cleaned up after being told water was again on the floor. Petitioners assert that when water was noticed on the floor, cones would be placed only until the area was mopped off, and then all warnings would be removed. No further action would be taken until someone again reported water from the dripping vents, when the same procedure would be taken. But this manager specifically knew there would be further leakage because repairs had not been made, and knew customers would be endangered by the water on the floor. Mrs. Washington is individually and jointly liable.

Plaintiffs plead sufficient facts that support imposing liability on Washington. They say she had the duty to "protect, warn and safeguard customers…from hazardous and unreasonably dangerous conditions." She breached this duty through <u>personal</u> fault: she had repeated knowledge of leaking vents and knowledge the drip would recur yet did not take any preventive efforts. In contrast to her general responsibility to keep the Wendy's clean, plaintiffs allege Washington knew about the dangerous leakage and still failed to remedy the situation. Given that plaintiffs state a valid claim against Washington, the undersigned finds the purpose is not to destroy diversity jurisdiction.

    b. <u>The dilatory factor</u>

The second *Hensgens* factor is whether the plaintiff has been dilatory in requesting the amendment. 833 F.2d at 1182. In analyzing the second *Hensgens* factor, courts examine the amount of time between the initiation of the original state court action and the filing of the motion to amend as well as the amount of time between removal of the case to federal court and the filing of the motion to amend. *Parish v. Columbia Gulf Transmission, LLC*, Civil Action No. 2:18-00853, 2018 WL 5544508, at *4 (W.D. La. Oct. 29, 2018)(citing *Richardson v. Wal-Mart Stores Texas, LLC*, 192 F.Supp.3d 719, 726-27 (S.D. Tex. 2016). Defendants argue the second *Hensgens* factor weighs heavily in favor of denying leave to amend. They point out plaintiffs received information identifying Washington on July 9, 2019, yet did not move to amend until January 30,

2020. Moreover, the case was removed on May 23, 2019, meaning over eight months passed between removal of the case and filing the instant motion.

While the undersigned agrees the defendants moved slowly to amend the complaint, they did comply with the scheduling order. In this case, the Court's scheduling order, issued on August 9, 2019, set January 30, 2020, as the deadline to amend pleadings. [doc. # 13]. Defendants filed their motion for leave to amend within the deadline. Accordingly, the court concludes the amendment was not dilatory. *See Jones v. Rent-A-Center East, Inc.*, 356 F.Supp.2d 1273, 1276 (M.D. Ala. 2005)(finding that plaintiffs were not dilatory because motion to amend was filed within the time allowed by the scheduling order); *Smith v. Robin America, Inc.*, Civil Action No. H-08-3565, 2009 WL 2485589, at * 6 (S.D. Tex. Aug. 7, 2009). When a deadline for amendments has been set, and the deadline has been complied with, it would be unreasonable for the Court to find the delay dilatory. Moreover, defendants fail to show they have been prejudiced by the delay.

    c. <u>Prejudice to Plaintiffs if their motion to amend is denied</u>

The third *Hensgens* factor looks at whether denying the amendment would cause prejudice. Courts in this circuit "decline to force [a] plaintiff to pursue only [certain] defendant[s] in this forum when [he] has a potentially viable claim against others, as well." *Diamond McCattle*, 67285887, at * 6 (citing *Lacy v. ABC Ins. Co.*, No. 95-3122, 1995 WL 688786, at *3 (E.D. La. Nov. 17, 1995) and *Porter v. Times Group*, No. 16-121, 2016 WL 8256692, at * 6 (M.D. La. Nov. 4, 2016)). In addition, "considerations of cost, judicial efficiency, and possible inconsistency of results militate in favor of not requiring Plaintiffs to prosecute two separate claims in two separate forums when both arise from the same set of facts." *Id.*

In the case *sub judice*, plaintiffs have stated a potentially viable claim against Washington. They would be prejudiced if they had to pursue this claim in state court. Considerations of cost

and judicial efficiency demand allowing plaintiffs to pursue their claim against Washington in this forum. This factor weighs in favor of granting leave to amend.

    d. Equitable considerations

Defendants argue this consideration weighs in their favor because "plaintiffs' failure to move for leave to name some or all employees who were working at the time of the incident while continuing to point to their potential fault reveals that their attempt to substitute Mary Washington alone is merely a plot to destroy jurisdiction." [doc. # 22, p. 17]. Regardless, because plaintiffs state a valid claim against Washington, the Court is compelled to grant leave to amend. In addition, the proceedings have not reached the dispositive motion stage, nor is trial imminent. Discovery is ongoing and the defendants have sufficient time to deal with the additional claim.

    e. Weighing of *Hensgens* factors

Plaintiffs state a valid claim against Mary Washington and filed their amendment within the deadline set forth in the scheduling order. And, if leave is denied, they would have to prosecute separate claims in separate forums when both arise from the same set of facts. In sum, the *Hensgens* factors, when considered in their totality, weigh in favor of allowing the proposed amendment.

## Conclusion

For the above stated reasons,

IT IS ORDERED that Plaintiffs' motion for leave of court to file an amended complaint is GRANTED.

IT IS RECOMMENDED that Plaintiffs' motion to remand be GRANTED.

THUS DONE AND SIGNED in Chambers, at Monroe, Louisiana, this 10th day of March 2020.

                                                                 KAREN L. HAYES
                                                                 UNITED STATES MAGISTRATE JUDGE